**MAIN LINE THEATRES, INC.,**
Appellant,

v.

**PARAMOUNT FILM DISTRIBUTING CORPORATION,** Warner Bros. Pictures Distributing Corp., RKO Radio Pictures, Universal Film Exchanges, Inc., Twentieth Century-Fox Film Corporation, Columbia Pictures Corporation, Loew's Incorporated, United Artists Corporation, and Allied Artists Distributing Corp.

**309 DRIVE–IN CORP.,** Appellant,

v.

**PARAMOUNT FILM DISTRIBUTING CORPORATION,** Warner Bros. Pictures Distributing Corp., Universal Film Exchanges, Inc., Twentieth Century-Fox Film Corporation, Columbia Pictures Corporation, Loew's Incorporated, United Artists Corporation, Buena Vista Film Distributing Corp., Allied Artists Distributing Corp.

Nos. 13508, 13509.

United States Court of Appeals
Third Circuit.

Argued Sept. 18, 1961.

Decided Jan. 16, 1962.

Rehearing Denied Feb. 14, 1962.

McLaughlin, Circuit Judge, dissented.

Harry Norman Ball, Philadelphia, Pa. (W. Wilson White, White and Williams, Philadelphia, Pa., on the brief), for appellants.

W. Bradley Ward, Philadelphia, Pa. (Samuel D. Slade, Abraham L. Freedman, Louis J. Goffman, Schnader, Harrison, Segal & Lewis, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

In these civil antitrust suits under Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, the appellants, two corporations controlled by a single family, have complained of certain practices of the defendants in the commercial distribution of motion pictures and have asked for treble damages and injunctive relief. In the court below the cases were decided on the defendants' pretrial motions, asserting that the parties had entered into a binding settlement agreement and asking the court to dismiss the complaints with prejudice. After a hearing, at which testimony was introduced, the district court concluded that "these cases were settled by [oral] agreement of the parties in May 1960, providing for payment of $10,000 by defendants and the giving of releases by plaintiffs". The court directed the defendants to pay $10,000 into the registry of the court and the plaintiffs to tender releases. Thereafter, the court entered the orders of dismissal with prejudice from which these appeals have been taken.

Most of the significant facts are stated or necessarily implied in the memorandum opinion of the court below. Others are clear and not disputed in the record. These two suits and eleven others like them were instituted at about the same time in the District Court for the Eastern District of Pennsylvania by several motion picture exhibitors, all of whom expressed similar complaints against the same defendants. Ten cases involved Pennsylvania theaters and three involved New Jersey theaters. One of the Pennsylvania cases, Colonial Amusement Co. v. Columbia Pictures, Civil Action No. 19,288, was the first of the group listed for trial. At this stage, pretrial conferences were featured by extensive negotiations for settlement of all ten cases involving Pennsylvania theaters. Negotiations were facilitated by the fact that counsel for the plaintiffs in the Colonial Amusement case was also counsel for the plaintiffs in the companion cases.

In these negotiations counsel, acting within their authority, expressed the willingness of the parties to settle these suits for a total sum of $10,000.[1] De-

---

[1] There was no formal offer and no formal acceptance. Neither was there a written settlement agreement. But the record warranted a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation for $10,000. We agree with the district court that the law requires no more formality and not greater particularity than appears here for the formation of a binding contract. Cf. Taylor v. Stanley Co. of America, 1932, 305 Pa. 546, 158 A. 157; Schermer v. Wilmart, 1925, 282 Pa. 55, 127 A. 315; Restatement, Contracts, §§ 19(b), 26.

When an analogous settlement problem arose in federal litigation under the patent laws, this court looked to the conflict termine the law controlling the settlement of laws rules of the forum state to deagreement. Peerless Weighing & Vending Mach. Corp. v. International Ticket Sale Corp., 2 Cir., 1942, 126 F.2d 239. Accord, Ingalls Iron Works Co. v. Ingalls, N.D.Ala.1959, 177 F.Supp. 151, aff'd, 5th Cir., 1960, 280 F.2d 423; Beirne v. Fitch Sanitarium Inc., S.D.N.Y.1958, 167 F. Supp. 652. Contra Greenberg v. Panama Transport Co., D.Mass.1960, 185 F.Supp. 320, rev'd on other grounds, 1st Cir., 290 F.2d 125, cert. denied, 1961, 368 U.S. 891, 82 S.Ct. 143, 7 L.Ed.2d 88. Here, we think the result on the merits is the same, whether a federal court applies its

fénse counsel then prepared and submitted to appellants' counsel a form of release to be executed by appellants.

■■ Appellants refused to sign the release because the release contained, in addition to the usual language releasing all claims up to the time of the release, a provision that the plaintiff exhibitor "agrees that its present availability and the present procedure pursuant to which it licenses motion pictures is reasonable". The parties construed this language as a relinquishment of the right to complain of the continuation of the licensing procedures which had been challenged in this suit. While this dispute as to what should be included in the release remained unresolved, appellants sold their theaters and advised the defendants that they would not settle the pending litigation.

At the hearing on their motion to dismiss, the defendants offered to accept releases without the controversial provision and the order of the court below required no more than that. Moreover, because of this concession by the defendants, the district court reviewed the controversy over the terms of a release as immaterial to the decision of this case. We do not agree with this position because, if the parties had not entered into a binding agreement before the dispute over the terms of the release led the plaintiffs to reject the settlement, no future modification of the defendants' position could impose any obligation on the plaintiffs. Therefore, it must be decided whether there was an expression of mutual assent between the parties sufficient to create a binding settlement agreement before controversy arose about the inclusion of a particular provision in a formal release.

Had this been an action for damages only, without a prayer that the defendants be restrained from continuing or repeating the licensing practices of which the plaintiff complained, the essential feature of any undertaking to settle the suit for a stated sum would have been the plaintiffs' promise to forego a money claim, the only matter in controversy. Here the suit contained a demand for injunctive prohibition of future wrongful conduct as well as a claim for money damages for alleged past misconduct. In such circumstances a reasonable person agreeing, without any expression of limitation, to accept a sum in settlement of the litigation should and reasonably would understand that both aspects of the suit were covered by the settlement. Certainly, a defendant offering a sum in settlement of a suit asking, among other things, for an injunction against certain conduct, would not understand that a similar demand could be asserted the day after settlement. This reasonable understanding determines the meaning of the assent expressed by the parties here. Accordingly, the defendants were entitled to such a release as they proposed and their insistence upon it afforded the appellants no justification for repudiation of or withdrawal from their bargain. It is immaterial that, yielding to appellants' insistence, the defendants subsequently eliminated from the release a term upon which they might have insisted.

■ What has already been said also disposes of appellants' argument that counsel had no authority to negotiate a settlement permitting continuation of the conduct of which appellants had complained. It is not disputed that counsel was authorized to settle the litigation for $10,000. It follows that authority in general terms to settle the litigation would reasonably be understood as including authority to dispose of a claim for relief against continuation of the alleged wrong.

An altogether different problem is created by another fact not heretofore mentioned. When the defendants first

own understanding of federal contract principles or whether it is guided by Pennsylvania contract law, which a Pennsylvania court undoubtedly would apply to this settlement agreement having all of its significant contacts with Pennsylvania.

proposed to settle these cases for $10,-000, they indicated that they would pay this amount only if negotiations pending in eight companion suits should also result in settlement agreements.

■■■ The record shows that appellants' counsel, in agreeing to the proposed settlement, understood that the defendants' promise to pay $10,000 was conditioned upon the success of pending negotiations for settlement of the other eight suits. Therefore, it becomes necessary to decide whether the fact that the bargain was thus conditioned prevented a contract from arising so long as the condition remained unfulfilled. Unquestionably, a valid bilateral contract may arise even though the promise of one party to perform is qualified by a condition other than the performance of the other party. See Restatement, Contracts, § 77. Of course the condition must not make the promise illusory or enable the promiser to avoid performance at will. Cf. Restatement, Contracts, § 79. But here the condition is such that the defendants, both in legal theory and in practical contemplation, would have to abandon the pursuit of an imminent advantageous settlement of other substantial claims in order to avoid their promise to settle these cases. Their promise was not in any sense illusory and, in its conditional form, was acceptable to appellants. Accordingly, both parties were bound in acordance with the mutual assent that they expressed. Atlas Trading Corp. v. S. H. Grossman, Inc., 3 Cir., 1948, 169 F.2d 240 (agreement to sell truck, provided a certain government permit shall be obtained); D. L. Walker & Co. v. Lewis, 1937, 267 Ky. 107, 101 S.W.2d 685 (agreement to buy stone from quarry if the purchaser shall obtain a certain public contract).[2] The Supreme Court of Pennsylvania has gone so far as to hold that the state constitution is violated by a statute invalidating any contractual condition under which a party promises to pay for work done only if an architect's certificate of approval shall be obtained. Adinolfi v. Hazlet, 1913, 242 Pa. 25, 88 A. 869, 48 L.R.A.,N.S., 855. We are satisfied that the parties entered into a valid contract to settle, upon condition that the other suits also be settled. Thereafter, neither party was free to repudiate the agreement during the short period required to accomplish the settlement of the other suits.

■ Finally, in this court for the first time appellant has suggested that the factual issues involved in this pretrial motion should have been resolved by a jury. It is a sufficient answer that no demand was made in the court below for such a jury determination. Rather, appellants acquiesced in the disposition of the matter by the trial judge. Assuming the appellants could have demanded a jury determination of this controversy, we think they have effectively waived that right. See Rule 38 (d), Federal Rules of Civil Procedure, 28 U.S.C.A.

All of the appellants' contentions considered, we have concluded that no reversible error was committed in dismissing these cases as settled for $10,000.

The judgments will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

These are antitrust actions by motion picture theatre operators against film distribution corporations. The question involved is whether they were settled.

The district judge found that words in the form of release submitted by the defendants are "considered objectionable by plaintiffs". The court goes on to hold that because the defendants are willing to accept a release without those words "* * * there is no need to decide

---

2. Professor Corbin has properly pointed out that a few cases admitting parol evidence of an oral condition qualifying a promise in a written contract on the ground that there would be no contract until the fulfillment of the condition may well have reached a proper result in the admission of evidence, but upon an incorrect analysis of the contractual situation. 3A Corbin, Contracts § 628, at 15 n. 13.

what is an appropriate release as contemplated by the oral settlement agreement."

The objectionable words in the submitted release are:

"3. Main Line Theatres, Inc. agrees that its present availability and the present procedure pursuant to which it licenses motion pictures is reasonable, * * *."

That language if it had been accepted by plaintiffs would have cut the heart out of their motion picture theatre operation. It was because the plaintiffs considered defendants' "procedure" in licensing motion pictures unreasonable to "its present availability" that they started these suits. The claim was for the damage sustained by plaintiffs arising out of the unreasonable conduct and actions of the defendants. That was the claim that plaintiffs agreed to settle. But they never agreed in addition to that that they would wipe out their theatres' right to function in the future without (according to their contention) being hamstrung by the unreasonable procedures of defendants. However, the latter at the time of the so-called oral agreement had every intention of including that important plaintiffs' claim in their settlement of the cases. It was a vital part of the release they drew and presented to the plaintiffs for execution. It was not until the plaintiffs persisted in refusing to accept the defense version of release that the defendants offered to waive the particular clause. The final position of the defendants was just that, namely, they waived what to them had been at the very least a substantial element of the settlement. There was and is no contention on their part that they had been trying to simply add the clause if possible or anything of that kind. The release sent plaintiffs by them was their idea of the contemplated settlement. It was never acquiesced in by plaintiffs. There was therefore no meeting of minds between the parties; no final settlement agreement. Later on, after plaintiffs had rejected the defense pro-

posal as set out in the release, it was too late for the defendants to then attempt to waive their "reasonable procedure" language. At that stage defendants were in fact submitting a new offer of settlement. Plaintiffs declined this as they were entitled to do.

In the circumstances the trial court could not validly hold that the plaintiffs must accept that new proposition. As I see it the order of the district court forcing plaintiffs into settlement should be set aside and the cases restored to the trial list for disposal of the antitrust claims on their merits.